JOHN B. SLAUGHTER V. S. W. MOORE ET AL.

Decided November 3, 1897.

**1. Preponderance of Evidence—Assignment of Error.**

It is the province of the jury and trial judge to settle the question of preponderance of evidence. An assignment of error that the verdict was contrary to the great preponderance of testimony does not authorize a reversal of the judgment.

**2. Venue—Principal and Guarantor.**

A suit against a principal and guarantor is properly brought in the county of the latter's residence where the contract shows prima facie liability on his part in case the principal was liable. If for reasons not disclosed by the contract the guarantor's liability had ceased, such fact was a matter of defense by him, not available to the principal as affecting the question of venue. (But the contention that the guarantor's liability was released by change of the contract was held not sustained by the facts in this case.)

**3. Same—Waiver.**

After a plea to the merits has been filed, an amended answer presenting a plea in abatement of suit because brought in a county other than that of defendant's residence comes too late.

**4. Charge—Evidence.**

A charge presenting the law in case certain cattle had been delivered by defendant in compliance with his contract, was properly refused where the testimony showed without conflict that there was no such delivery.

**5. Contract of Sale—Delivery and Acceptance.**

After an adjustment of differences between seller and purchaser as to the number of cattle to be delivered on a sale, by which a designated number are to be given and received as a compliance, the question of the true construction of the original contract becomes immaterial.

**6. Charge—Verdict—Immaterial Error.**

Errors in the charge of the court upon a theory of the case rejected by a verdict of the jury, which is supported by the evidence, become immaterial.

**7. Contract of Sale—Damages—Burden of Proof.**

Where the vendor and vendee each claim damages for alleged failure to comply with a contract for the purchase and sale of cattle at a fixed price, the burden is on the former to show that the cattle were worth less than the contract price, or on the latter to show that they were worth more, in order to entitle either to a recovery.

**8. Guarantor—Recovery Over—Pleading.**

One sued as guarantor for another defendant may recover over against such principal without any pleading on that behalf. Rev. Stats., art. 3815.

APPEAL from Mills. Tried below before Hon. W. A. Blackburn.

*W. R. Scott*, for appellant.—1. The defendant, D. W. Christian, having been only a guarantor upon the contract sued upon, he was discharged from liability thereon by changes and alterations therein made by the plaintiff and the defendant Slaughter without the assent of the said Christian, and by the fulfillment of the guaranty by defendant Slaughter, and the defendant Christian was therefore neither a proper nor a necessary party to this suit, and he could not be joined with the defendant Slaughter in order to give jurisdiction over said Slaughter in Mills County, the said Slaughter having put in his plea of personal privilege of being sued in Mitchell County, which was the county of his domicile. That Christian was released by alteration in contract: Gardner v. Watson, 76 Texas, 31; Lane v. Scott, 57 Texas, 367; Wylie v. Hightower, 74 Texas, 307; Bogarth v. Breedlove, 39 Texas, 561; Clark v. Cummings, 84 Texas, 610; Dan. on Neg. Inst., secs. 1377, 1378, 1386; Brandt on Sure. and Guar., secs. 298, 340, 344, 360; 16 Am. and Eng. Encyc. of Law, 872, 917, 918, and notes. That defendant Slaughter was entitled to plead Christian's misjoinder in his plea of personal privilege: Railway v. Mangum, 68 Texas, 342; Henderson v. Kissam, 8 Texas, 46; Pool v. Pickett, 8 Texas, 122.

2. The cattle called for by the contract sued upon, having been counted out and turned over to plaintiff on October 17, 1895, the defendant Slaughter's part of the contract was performed, and if, after they were turned over to plaintiff, he failed and refused to pay for them in the manner agreed upon, he can not complain because the defendant Slaughter repossessed himself of them; and on the other hand, if he did pay or offer to pay for said cattle in the manner agreed upon, the cattle were taken from him wrongfully, and his remedy would be for a con-

version of the cattle, and not for failure to deliver, and hence no recovery could be had in this case in its present form, and said special charges ought to have been given. Benj. on Sales, 2 Am. ed., secs. 789, 795.

3. The appellee Moore having contended at the time of the delivery of the cattle, which was shown in evidence upon the trial, that by the terms of the contract sued on he had the arbitrary right to cut back from the herd tendered him by the appellant fifty head, without regard to whether or not said fifty head were such cattle as the contract called for the delivery of, it was the duty of the court, especially when requested to do so, in charging the jury, to construe the contract with reference to this point, and inform the jury that appellee, under the contract, had no such right to cut back.

4. A guarantor in order to obtain judgment over against his principal must plead the fact of his guarantorship, so that such issue may be tried, and unless he does plead it he can not have judgment. Rev. Stats., arts. 3813, 3819.

*Lindsey & Goodson*, for appellees.

KEY, ASSOCIATE JUSTICE.—This is a suit based upon a written contract, which reads as follows:

*"The State of Texas, County of Mitchell.*—This contract, this day made and entered into by and between John B. Slaughter, of the aforesaid State and Mitchell County, and D. W. Christian, of the aforesaid State and Mills County, witnesseth, that the said John B. Slaughter has this day, for the consideration hereinafter named, bargained and sold unto the said D. W. Christian the following described cattle, to wit:

"Eleven hundred (1100) head out of 1150 head of two, three, and four-year-old steer cattle, now running in what is known as the Refrigerator pasture, fifteen miles east of Colorado, Texas, at nineteen ($19) dollars per head. Said Christian has the right to have the cattle delivered at Mullen, provided he will pay said Slaughter $300. If Christian elects to have delivery at Colorado, said Slaughter shall be paid $60 by Christian. Said Christian agrees to give fifteen days notice to said Slaughter when to make delivery of above cattle, and all of said cattle to be smooth, straight, merchantable cattle; sway-backs and big-jaws and cripples and blinds to be rejected by the said D. W. Christian. The said cattle are to be in the following maks and brands: ˙Marked thus　　　. Branded thus: U ∞ , T H connected, H 6 connected, and various brands on left side. The said John B. Slaughter binds himself to deliver said cattle unto the said D. W. Christian on the 1st to the 15th day of October, A. D 1895, at Christian's option, at Colorado or Mullen, Texas, at Christian's opinion, free from all expense to the said D. W. Christian. The said cattle are to be passed upon and graded at pasture in Mitchell County and counted at Colorado or Mullen, at Christian's option. At the signing of this contract the said D. W. Christian pays unto me, the said John

B. Slaughter, the sum of $4000, the receipt of which is hereby acknowl-edged, and the said amount of $4000 is to be considered as the advance payment on said contract, and the balance is to be paid upon the deliv-ery of said cattle at Colorado or Mullen, Texas.   This instrument is signed, sealed, executed, and delivered in duplicate, each party retain-ing one.

"Witness our hands and seals this the 29th day of June, A. D. 1895.
                    (Signed)      " JOHN B. SLAUGHTER.
                                  " D. W. CHRISTIAN."

Christian assigned and guaranteed performance of the contract by the following indorsement on the back thereof: "Comanche, Texas, Aug. 28, 1895.—I hereby transfer all my right, title, and interest in and to the steer cattle herein contracted between the subscribers hereto, for a valua-ble consideration, and hereby guarantee to S. W. Moore, the conveyancee herein, the fulfillment of this contract, according to its face and reading. (Signed)   D. W. Christian."

Moore sued Slaughter as principal and Christian as guarantor for non-performance of the contract, and obtained a verdict and judgment for $7575, and Slaughter has appealed. It is not charged in appellant's brief that the verdict is not sustained by testimony; the only assignment of error on that subject being to the effect that the court erred in not grant-ing appellant's motion for a new trial, because the great preponderance of the evidence showed that the $4000 paid in cash on the cattle was a forfeit; that plaintiff failed and refused to receive and pay for the cattle according to the contract; and that at the time and place said cattle were to be delivered they were not worth more than $15 per head. When, as in this case, the verdict is based mainly upon oral testimony, it is the province of the jury and trial judge to settle the question of preponder-ance of evidence, and when the record contains testimony that will sup-port a verdict, an appellate court should not set the verdict aside, al-though, in so far as could be determined from the record, such verdict might be against the preponderance of testimony.   Therefore, if we should hold that the record sustains this assignment of error, inasmuch as it only charges that the verdict was contrary to the great preponder-ance of the testimony, we would not be authorized to reverse the judg-ment.    However, it is proper to say that in our opinion the verdict is amply supported by the overwhelming preponderance of the testimony, but inasmuch as it is not assailed, except in the manner referred to, we deem it unnecessary to make a full and accurate statement of the facts proved, and shall hereafter make only such reference to the testimony as we deem necessary in stating our conclusions upon the question of law presented for decision.

The plaintiff lived in Comanche County; defendant Slaughter lived in Mitchell County, and defendant Christian lived in Mills County.   The suit was brought in Mills County, the petition stating the residence of each party as above mentioned. On the 15th of September, 1896, Slaugh-

ter filed his original answer, which among other things contained a general denial and a special plea setting up certain facts as a defense to the plaintiff's suit. On the 21st day of September, 1896, Slaughter filed an amended original answer, in lieu of his original answer filed September 15, 1896, and in said amended answer was a special plea in abatement, alleging in substance that the defendant Christian had been released from liability on the contract sued on, and that the plaintiff had made him a party defendant for the fraudulent purpose of giving the court jurisdiction over the defendant Slaughter. It was alleged in this plea that Christian was released from liability as a guarantor, because the plaintiff had made a contract with the defendant Slaughter changing the time and place for the delivery of the cattle. Defendant Christian answered and denied liability on the contract, but before the case went to trial he withdrew his answer and permitted judgment to go against him without objection.

The trial court did not submit to the jury the questions presented by Slaughter's plea in abatement and refused special charges requested by him upon that subject, and these rulings are complained of in this court.

In our opinion this complaint is without merit and should not be sustained. According to the face of the obligation sued upon, Christian guaranteed performance by Slaughter. Therefore, if Slaughter was liable, Christian was prima facie liable also. If for some reason, not disclosed by the written contract, Christian's liability had ceased, such fact was matter of defense to be interposed by Christian and litigated upon trial, not as affecting the question of venue, but in determining Christian's liability. Besides, if the testimony showed any change in the contract, as to time of delivery, it did not show that the agreement changing the time was based upon any consideration. Hence it was not binding and would not release Christian. The contention that the place of delivery was changed is not borne out by the facts. Though not as specific as it might have been, we think that the parties to the contract intended that Christian, or any one succeeding to his rights under the contract, should have the privilege, if he so desired, to receive the cattle at Slaughter's Refrigerator pasture in Mitchell County. The parties themselves seem to have placed this interpretation upon the contract; and we are satisfied that, although not clearly expressed, such was the intention of its makers.

Furthermore, it would seem that the plea in abatement was not filed at the proper time. The rule is that such pleas must precede an answer to the merits. Compton v. Stage Co., 25 Texas Supp., 68. Several days before the plea in abatement was filed, Slaughter had filed a general denial and had otherwise answered to the merits. It is true that the amended original answer, which contains the plea under consideration, was filed in lieu of the original answer, but this does not change the fact that, before filing the plea in abatement, appellant had answered to the merits.

No error was committed in refusing appellant's special charge in-

structing the jury to find for him if they believed from the testimony that he delivered to and plaintiff accepted the cattle described in the contract. The testimony coming from both sides shows without conflict that the cattle were not delivered; that they remained in appellant's pasture and in charge of one of his employes, who had instructions from him not to permit them to be removed from the pasture until they were paid for. It is true that Moore had gone in the herd and cut out fifty-two head, and he and Slaughter had agreed that the remaining 1072 head were such cattle as the contract called for, and they were for a day or two herded by hands employed by one W. D. Bell, to whom the plaintiff had contracted the cattle; but Slaughter admits in his testimony that they remained under his dominion and control until the evening of the 18th of October, 1895, when he caused them to be turned loose in his pasture. There was no testimony to warrant the special charge referred to.

What has just been said applies to the assignment which complains of the action of the court in refusing a special charge upon the subject of the delivery of the cattle to Bell. The evidence shows that Slaughter never surrendered his dominion over the cattle, and never in fact delivered them to anyone. Besides, we are not prepared to indorse the rule of law announced in said special charge.

Appellant complains because the court refused to instruct the jury that the plaintiff had no arbitrary right to cut back any cattle from the herd and that Slaughter was only required to tender to plaintiff 1100 head of straight, smooth, merchantable, two, three, and four-year-old steers.

This charge was properly refused, because, if the contract did not authorize Moore to cut out the cattle that he did, the testimony shows without conflict that he and Slaughter adjusted all matters of difference on this subject, and agreed that the remaining 1072 head were to be delivered and accepted under the contract, and Slaughter was to pay Moore $2 per head for the amount that the 1072 head fell short of 1100 head. This matter having been adjusted, could not be and was not given by Slaughter as a reason for noncompliance with the contract.

Under his eleventh assignment of error, appellant submits the following proposition: "A purchaser of chattels to be delivered at a future time who makes an advance payment on the purchase price thereof can not maintain an action at law to recover back such advance payment when he is himself in default, having refused to receive the chattels when tendered at the proper time and place, thus preventing the performance of the contract himself. If in such case he can have any action at all, it must be upon some equitable grounds aside from the mere fact that he had made the advance payment."

This proposition is not borne out by the record. The testimony does not show that the plaintiff was in default. On the contrary, it shows that while, by mutual consent of all the parties, delivery of the cattle was delayed for two or three days, it was done to enable Bell to raise the

money to pay for them; that Moore had the money in bank at Comanche, Texas, and, according to the plaintiff's testimony, Slaughter agreed that if Bell did not raise the money and take the cattle, he would accept Moore's check on the Comanche bank for the balance due on them. The verdict settled the fact that the plaintiff was not in default, and therefore appellant's proposition, if sound in law, shows no reason for a reversal in this case.

Among other things, Slaughter set up in his answer that he was ready and willing to deliver the cattle at the time and place required by the contract, and in fact did deliver them to the plaintiff, and that the plaintiff refused to pay for them and turned them loose. That, at the time, the cattle were worth only $15 per head, and that by reason of the conduct of the plaintiff, he, Slaughter, had been damaged more than $4000. Wherefore, plaintiff ought not recover anything.

On this phase of the case, the court charged the jury as follows: "If you believe from the evidence that defendant gathered, counted out, and tendered said cattle to plaintiff, or by direction of plaintiff tendered them to said Bell, and that such tender of the cattle was at the time and place designated in said contract, and that plaintiff and said Bell failed or refused to pay the balance of said purchase price of said cattle; and if you further believe that the market price of said cattle at the place of tender and delivery was less than $19, and you further find, as aforesaid, that said sum of $4000 was intended as a forfeiture, then you will find for defendant Slaughter the difference between $19 per head and the amount per head less than $19 you may find them worth, if such difference is shown by the proof.

"The burden of proof is on the defendant to prove that the cattle were worth less than $19 per head at the said time of performance of said contract, before he can recover any damages on account of plaintiff's failure to perform his part of the contract."

Appellant assigns as error the latter part of the charge quoted, and contends that as he asked for no judgment for damages against the plaintiff, it was error to charge the jury that the burden of proof rested upon him to show that the cattle were worth less than $19 per head at the time of performance of contract. Inasmuch as appellant did not pray for judgment against the plaintiff for damages, it may be that the court erred in submitting that issue to the jury, but the error was against appellee and in favor of appellant, and, as the issue was submitted, there was no reversible error in telling the jury that the burden of proof rested upon appellant on that branch of the case. The contract price of the cattle was $19 per head; the plaintiff sought to recover damages on the ground that at the time of delivery they were worth more than that amount per head; and the court instructed the jury that, in order to recover such damages, the burden of proof rested upon the plaintiff to show that the cattle were worth more than $19 per head. If it was proper to so charge as to the plaintiff's right to recover on account of enhanced value of the cattle, it would seem equally proper to so charge

in submitting the right of the defendant to recover on account of depreciation in their value. Besides, under a charge placing the burden of proof on the plaintiff to show that the cattle were worth, at the time they should have been delivered, more than $19 per head, the jury returned a verdict for the plaintiff for a sum that necessarily shows that they found that the cattle were, at that time, worth more than that amount. This being the case, if it be conceded that the court did not state the law correctly in submitting the right of the defendant to recover damages, the error is now immaterial and harmless. Having found that the cattle were worth more than $19 per head, it is manifest that the jury would not have found that they were worth less than that sum, if the court had omitted the charge complained of.

The trial court rendered judgment over in favor of Christian against Slaughter for such sum as he, as guarantor, might pay in satisfaction of the plaintiff's judgment. This is assigned as error, upon the ground that, Slaughter having withdrawn his answer, there was no pleading to support such judgment. The plaintiff having sued and recovered judgment against Christian, as a guarantor, it was proper, without any pleading on his behalf, for the court to render judgment over against Slaughter, in favor of Christian. Rev. Stats. 1895, art. 3815.

We have considered all the questions presented in appellant's brief, and finding no reversible error, the judgment is affirmed.

*Affirmed.*